Good morning. Thank you. Good morning. Good morning. It's Jerome Bowen on behalf of the Brodeurs. They are the appellants in this matter. May it please the court. I'm grateful to be here. Thank you to all of you who are sitting here today. Your Honor, I'd like to reserve seven minutes, if I could, for any rebuttal. All right. I'll try to remind you, but keep track of your own time. Thank you. Okay. Thank you, Judge Ezrin. Your Honor, this is a very straightforward case. The Liberty's entire argument rests upon one word, and that is underlying. They indicate in their brief that... Counsel, can I ask you sort of a threshold question here? Yes. And I'm going to butcher the name, but the Manessas case has been settled, and so it's kind of gone. How does that affect... You know, there was different Rule 2086 disclosure language for each of the different parties here. Are we still... Does it still make sense for us to consider the language from the Manessas case, even though they're now gone? Or, you know, are we only looking at the language from your Rule 2086 disclosure? Judge Van Dyke, that's an excellent question. Yes, I believe that it is imperative that we consider all of the disclosures, including the Manessas disclosure, because the issue is really fairness. Notice and fairness. And that's what we're talking about here, was the Liberty putting on sufficient notice as to what would be testified to, and what were the disclosures, and how were they disclosed, and what was the language. So, Judge Van Dyke, going back to that major point, the issue rests upon, from the perspective of the appellee, is they decided not to depose the witnesses during the course of discovery, they say, in this case, because they were not disclosed as having any evidence or testimony that they would offer on the issues that were germane to the application of the exception to the exclusion. We know, pursuant to the facts, that that is not so. And the facts can be claimed, Your Honors, from a very good order that was written initially by Judge Gordon in the District Court of Nevada, which is document ER-362 through ER-374, and that is the order dealing with several motions. And the first motion that that dealt with, which has good language for purposes of this argument, is there was the deposition taken of Mrs. Brodeur. Her deposition was taken in July of 2019, before the discovery cut off in the federal court matter, and her deposition was taken in the state court matter. And she testified, very specifically, that the vehicle was used to service the property. And that is one of the, that's part of the language that goes to the exception of the exclusion, which is at issue. So, whenever did Jerry Brodeur inform Liberty that he thought the accident fell within the exception to the exclusion in the insurance policy because the ATV was not registered and was used to service the cabin? When did Jerry do that? Yes, Judge Callahan, that he, his deposition was taken in the state court matter and was and Liberty, of course, in a tripartite relationship, they represented, those lawyers represented Liberty as well as the insurance, the Brodeurs. And he testified during that deposition, very specifically, that the vehicle was used to service the property. And he was asked during that deposition, and I will note, Judge Callahan, that during the trial, if you want to just say during the trial, they, their lawyer himself. They, the trial, are you talking the bench trial and declaratory relief? Is that? Yeah. Okay. Yes, Judge Callahan. Liberty itself opened the door. They specifically asked Mr. Brodeur if he used this vehicle to service the property. Now, and this is after they had said, we want to, we want to get this testimony precluded by oral motion at the commencement of trial. So, they then turn around and they open the door and they specifically go in and they ask several questions about him using that vehicle for servicing of the property. So, I would submit to you, they waived this argument in that respect. All right. Well, in your position, so when you notified them that Jerry B. would be a So, he was notified in our latest disclosure in August 22nd, 2019. The bench trial occurred in 2021. So, that was two years. Yes. I mean, two years. And what happened during this time, Judge Callahan, Your Honor, which is really key, is they used this argument as a sword. And he shield, let me tell you, he used it as a sword to strike down Manessis' motion for summary judgment. So, Manessis filed a motion for summary judgment, okay, which is part of that order, which is ER 362, document number 35. And they used that, they used and they said, hey, we haven't had time to do discovery. And you can't use Mrs. Brodeur's deposition against us. We can't oppose the motion because we haven't had any discovery. Let me tell you what the judge said, which was key. The judge says, I grant Liberty's request for relief because although it was not improper for Manessis to file an early summary judgment motion, Liberty did not have a realistic opportunity to pursue discovery before filing a response. And he says, quote, Liberty identified areas of inquiry that could have proved fruitful. This is in his order, the judge's order, including one, whether the ATB was registered, and two, whether it was used in the service of the cabin. That's ECF number 23. And the judge specifically pointed out Liberty's argument. So, they said, hey, wait a minute, we've got to go back and do this discovery because of what Mrs. Brodeur is saying, because it's fruitful, it's relevant, it's important, it's an issue in this case, and we're going to go do it. So, what did they do? They didn't do any discovery on that issue. All they did was send out interrogatories in November of 2019, 30 days before the close of discovery. 30 days. They waited to do anything on their case. And they're the plaintiff. 30 days before the close of discovery, they sent them. Counselor, I think we probably get your point that it does seem like this was almost their misuse of the rule. One question I have for you, you know, looking at the authority cited by both parties about Rule 28, I didn't see much, if anything, about this particular situation here. Most Rule 28 discovery sanctions are where somebody fails to disclose somebody altogether, right? And they're not, there's not much in the way, am I right in saying that there's not much in the way of authorities as far as if you do disclose that you're going, that somebody's going to speak, but you don't, you know, as Judge Gordon concluded here, that you just didn't disclose the proper subject as to, it seems like there's hardly any authority on that. Am I right on that? Are there cases that, what is the best authority that has to do with somebody who's been disclosed, but the argument is that you didn't provide the topic that they were going to talk about? Yeah, Judge Van Dyke, I think that the, I agree with you. There's very little on this, if any, but let me go to what we talked about in our brief, in page 22 of our brief, and that's when you're looking at harmless error. Let's just go to that, so something hasn't been disclosed. Well, I'm actually talking about something that's sort of before that, right, PC? Harmless error obviously is assuming there's error, right? But then you're asking whether it's Rule 37, is it Rule 37 if they're arguing that the judge relied on the Rule 37 by its language, I think it addresses the situation where you haven't disclosed somebody, or you haven't disclosed documents or something, but it's not really the text of it. It doesn't fit real well on the idea that you disclosed somebody, but you didn't disclose, like, fully what they were going to talk about. So, I'm wondering if it's even proper to use Rule 37 like it was used here. And I would agree with that. And the judge immediately overlooked and didn't really analyze and go through the analysis like he could have. He simply went to willfulness, and willfulness was something that he did. And that's a good, he said, I think the district court determined that the narrow Rule 26 disclosure was willful. What's your response to that assertion? Sure. And thank you, Judge Callahan. My response is it wasn't willful. At best, it was negligence on my part. Let me say in all honesty as an officer of the court, Your Honors, I use the term underlying, which I know is not a legally defined term. I use that to, as the dictionary does, it means something lying or situated under something. I use that term to refer to the underlying case, this case. And I will stand corrected, but I will in all honesty tell you that that was the intention, is to talk about this case, obviously. And the judge went right to willful. Willful connotes an intentional or deceitful act. And I don't see how that's possible. I don't see how it's possible under the circumstances that I can attempt to manipulate in some way liberty when liberty already was on notice of all of these things. Your Honor. Well, I do anticipate your response, but I want to ask you this question because I'm going to ask liberty this question. All right. This bench trial is a declaratory relief on coverage, right? That's correct. So why wouldn't an insurance company be on notice that the insured is going to try to show that either, that they somehow fall within the coverage? And as you said in depositions, it had already, there had already been testimony about the specific language of the ATV was not registered and was used to service the cabin. So is it your position that that certainly put them on notice if they want, if they want declaratory relief that there's no coverage, that the exclusions or exceptions to the exclusions are, and who would know about that other than the person that lives on the property? You're correct. You're correct, Judge Callahan. This is a factual issue for the brokers. They're not experts. They're not coming in to testify about application of a certain part of the policy. That's a legal determination. Well, my understanding, what the judge did, the judge made a determination that on the, was not used to service the cabin. Well, her test basically said, I'm going to strike this witness. Therefore, you have no evidence that it was used to service the cabin. And so I don't have to worry about whether it was not registered. Because it's an am thing. You have to show both, right? For the exclusion. That's right. So let's just say we agree with you that the judge, that Liberty was on notice, that the judge, you know, immediately went to guns, did the highest sanction, or whether there was error, didn't analyze harmlessness, anything, that we say you get relief on that. What's to prevent the trial court from going back and basically, I mean, I was a trial judge. So the trial judge heard from Mr. Brodeur, and to just say, well, I don't believe you that that was, that you used it to service the cabin. And if the trial judge finds that, then you're out anyway, right? Factually. It'd be really hard on appeal. Well, I don't think so. And I tend to, I wonder why Judge Gordon went ahead and allowed the testimony. Because if it was a procedural issue on Rule 26, on disclosures, he could have just ruled right up front, I'm not going to let him testify. Well, no, he could have. But trial judges a lot of times like to peek under the covers. And then they peek under the covers, and then they say, well, I've heard it, but, you know, then go back to the other. And is that a signal that the judge thinks that that didn't convince him? And then what's to prevent that from just going back, and then you're right back where you started? And I don't think so. And I get that from his order on the motions for summary judgment, and the motion of strike, where he said that the language of the exception, as well as certain other language, is ambiguous. And because it's ambiguous, it's construed to be the broadest coverage possible for the insurer. And the insurer was very specific. Counsel, I think, I think, I'm not sure you're answering what I think is Judge Collins' question. I think what she's saying is that you could still be ruled against factually by the judge, because the judge is the finder of fact on this bench trial. So it's not like the ambiguity and such, that's all legal conclusions. But I think what Judge Callahan was asking was, I mean, couldn't you just still lose because you go back and the judge considers this as, I don't believe you, and, you know, find your client not credible or something? Judge VanDink, he could do that. I mean, he's the fact finder. He can cite credibility. He can say they're not credible. I don't see any evidence of that in the record. It's the only evidence that was before him to support that ambiguous statements. Well, okay, so you're down to about five minutes you want to reserve on rebuttal. But I want to make sure my colleagues don't wait. I have one. Oh, Judge Ezra wants to ask a question. You know, the black and white situation is where you have somebody, in the typical tort case, you have somebody you designate as a witness on liability only and then you call them and you start asking them questions not only about liability but about damages. And that's an easy situation. Here you are suggesting that we have a gray situation, that what was to have put liberty on notice, and certainly the court on notice, that you intended to call this witness for the purposes in which you attempted to solicit his testimony. Now, what exactly, I'm very, what exactly in your disclosure, precisely now, do you rest on to make that? Yes, and thank you, Judge Ezra. I'll tell you precisely what we rest on and how, as we said, they'll testify regarding the facts and circumstances of the underlying claims. And the word underlying is not capitalized. It's not defined. There's no language that's attached to it such as the plenary case, the underlying plenary case, or the underlying predicate case. As we see sometimes, as we see, liberty is defined in their complaint what underlying means. So your argument is basically that if liberty was unhappy about your disclosure, they could have moved the court to require you to make a more precise disclosure. They certainly could have. They certainly could have, Judge Ezra. They could have gone to the magistrate on discovery and said, we object. We don't understand this. This is dead and ambiguous. We think it's this. It could be this. We're a little confused. And Judge, that's looking at it in a box. Let's look at all the circumstances, all the motions that were heard and the attached depositions and their discovery. They did discovery on the exception. Liberty, there's no reason to talk about registration and permitting if it was just to support their exclusion. Registration and permitting are not in their exclusion language. They're only in the exception. So you've answered my question. Thank you. All right. We'll reserve the balance. Thank you. Thank you, Judge. All right. Liberty, please. Good morning, Your Honors. May it please the Court. My name is Amy Samper from Clyde & Co. I'm here representing FLE, Liberty Insurance Corporation. As Your Honors noted, this appeal involves a very specific issue, namely whether the Federal Rules of Civil Procedure, Rule 37C, permits a district court judge to limit a party's presentation of evidence at trial to let that party disclose their Rule 26A disclosure. And Liberty respectfully submits that the answer is a resounding yes. Well, it would be interesting to jump to. I'm having a really hard time. When you've filed, you're having a bench trial on declaratory relief on coverage. There have been depositions that certainly touch on that. It's your policy. I'm having a very hard time coming to the conclusion that you didn't know that jury B thought the accident was covered by the exception to the exclusion. Why would that testimony have been relevant? So, why don't you convince me that it's your policy, it's all about coverage, and coverage goes to coverage, to exclusions, to exceptions, to exclusions. There's been testimony to that effect. Why were you surprised? And you had two years from when you knew he was going to testify. Why didn't you ask for more specificity if you were concerned? A couple of questions in there, Your Honor. Let me see. Yeah, there's a lot. But it's kind of a mirror. Yes. Rule 26A, as you all know, requires, and I think this goes to one of the other questions that was asked earlier, not only to the identity of the witness, but the subject of the information that will be testified to, the evidence that will be presented by that witness. In this instance, the Brodeurs never disclosed that Mr. Brodeur would testify about the registration of the ATV or the use of the ATV to service the cabin, which were the only issues that were germane to the coverage issue on which they had the burden of proof. So the attempt to shift the burden somehow, that it was incumbent on Liberty to somehow elicit that information from the insurers who had the burden of proof. Counselor, were you aware of what you just told us back then? Were you aware that this was the only issue that they had to prove? Of course. Okay, so you were aware of that. I think this is what Judge Callahan was just asking. We're just really struggling to think that like this was really surprising to you that they might want, you know that they have the burden of proof. You know that probably the only people that can speak to that are the Brodeurs. And so how could you possibly be surprised on those questions? How is this not harmless? How could you possibly be surprised that they are going to want to talk about this? Really having trouble thinking that this was somehow a surprise or that you were somehow harmed by this. It seems to me rather that you're probably excited at the fact when you read their disclosure that maybe this doesn't cover it, and then you just sat and laid behind a log. I understand you don't have any obligation to ask them to do anything. I understand that. But you do run the risk that a court's going to find it harmless if you don't do that. Your Honor, so first of all, as Mr. Bowen pointed out, underlying action was specifically defined in the declaratory relief complaint. And then counsel used that very language in their disclosures. Mr. Brodeur would testify about the underlying action, quote, unquote, and damages. Damages are not an issue in a declaratory relief complaint. So, technically, we didn't know what Mr. Brodeur would testify. And the burden is on the insured, in this instance, the defendant Brodeurs, to comply with the disclosure requirements. So, counsel, you really are telling us that you did not know. I understand your argument. I don't know if I agree with that about the underlying, but I understand the argument that it does not encompass the exception to the exclusion, I guess. But I'm really struggling with the idea that you didn't know that Mr. Brodeur or Ms. Brodeur were going to want to testify. That's the problem, I think, that we're struggling with. They very well may want to testify about it, but the fact of the matter is they failed to disclose what they were going to say. So, there's a harmlessness exception. Well, it isn't harmless, because a decision was made by Liberty, based on the disclosures in this case, that it was not necessary for Liberty to undertake discovery on the Brodeurs, because the information that they provided in two years was the only information they intended to offer testimony about was the underlying action and damages. So, how appealing is the argument that the insurance company's got sharp elbows and knows that there's a possibility that they may have an exception to the exclusion, and so they lie in wait for two years and then spring it at the bench trial? It's not really that appealing. You don't have the burden to prove it, but by the same token, it is your policy, and if you looked at it and you can see that that would be their window, you don't have to tell, you know. And I'm not even sure if, let's say they didn't have a lawyer and they came to you and they said, well, you know, we used it, you know, this is how we used it, and then you said, well, sorry. But you're kind of on, I mean, the deposition seemed to put you on notice that that was at issue. The depositions were not taken in this case. They were taken in the underlying case. Liberty was not a party in the underlying case. They did not appear in the underlying case. So, let's start with Mrs. Brodeur. Mrs. Brodeur's deposition was taken during the discovery period of this coverage action. So, her deposition happened. Liberty was not noticed at that deposition. They did not attend that deposition. They didn't appear, and the deposition transcript itself was not disclosed in the coverage action. The disclosures were not supplemented to say Mrs. Brodeur will testify consistent with her testimony after deposition given in this underlying case. That never happened. Mr. Brodeur's testimony is an entirely separate issue. Mr. Brodeur's testimony occurred after the close of discovery in the coverage action, once Liberty was not put on notice that that deposition was happening. Okay, so the declaratory relief bench trial, you're asking the court to say there is no coverage because there's an exclusion, right? Yes. But the policy has an exception to the exclusion. How can you truly, with a straight face, claim surprise that the exception to the exclusion would be subject matter in the bench trial? Because in the course of two years, the insureds never advised Liberty, as was their obligation under Rule 26A, that that was subject matter about which they intended to testify. To follow up on Jess Killian's question, you're trying to figure out whether you have coverage, right? And so you're looking at it and you're saying, and you think, I don't think we have coverage. We have to cover because we fall within this exclusion. But as a good lawyer, you would say, but does this exception apply? And if somebody, you know, and if you were talking to your client and the client says, so what should we do? You say, well, we'll bring a declaratory action in federal court. So what's going to happen? Well, we'll, you know, we'll say that the exclusion applies and then say, but the judge may find that this exception applies. Well, who possibly could speak to whether that exception applies? I think you'd have to say with a straight face why the Broders will probably speak to that. You know, and you talk about what do you think they'll say. Again, it's just really hard. You are relying on this, you know, like a very strict interpretation, but there is a harmlessness exception, right? And it's hard to figure out why the harmless, this is not harmless because it's really, I cannot conceive of the fact that you didn't think about and know that, A, they're going to make the argument about the exception and, B, who would testify? Is that nobody else would? There would be nobody else that would testify to that, right? Well, potentially, Your Honor. And certainly it was not out of the realm of possibility, but it was also possible that the Broders didn't have any information relevant to this issue, and that's why they didn't disclose it. It was their obligation under Rule 26A. So can you just tell us that in the underlying case that they had talked about this? Were they going to talk about it again? Not exactly. This was not an issue in the underlying case. There were some questions asked of Mrs. Broder that, you know, related to use of the vehicle. And Liberty was, again, not on notice of that deposition, and it was not disclosed in the coverage action. So it was not part of the record that was being considered in the coverage action. It was not appropriately disclosed. We might not be here had that been the case. Plus, Mrs. Broder was not offered as a witness at this trial. And to your point, God. Can I ask you about the go to the willful fault or bad faith? Because that's a separate issue. I don't think that the judge didn't conclude they had bad faith. I don't know that you're making the argument that they had bad faith. So it really kind of comes down to the willful or fault.  That willful is basically if you intentionally do something. Like if you, you know, write your disclosure, you willfully wrote the disclosure. And therefore, I mean, you see the problem with the difficulty with that, which is that's always going to be true unless somebody, you know, accidentally printed out the wrong disclosure for the wrong case and sent it to you. That would be the only time that willful, it wouldn't be willful under that interpretation. But is that your, I just want to make sure, is that your position or do you have a more nuanced? No, I don't think there's a more nuanced position, Your Honor. And that's exactly what Judge Gordon concluded below. Then wouldn't every act be willful under your interpretation? And then what does that just write out the meaning of willful if you look? It seems every act, every time there was a disclosure with your interpretation, dot, dot, dot, it's willful. That's it. End of inquiry. I think, Your Honor, that the, and I believe from a reading, and when you have an opportunity to read the record on this, that it was a concern. It was willful because there were many opportunities over the course of two years to have corrected this disclosure. One of which would have been at the time that the summary judgment motions were filed and the Menezes defendants, I'm sorry, and the Brodeur defendants joined in that motion for summary judgment filed by Menezes. But even at that time, they failed to disclose. Counsel, I think what you're saying is no different than that they had two years to correct their mistake. I just want to make clear because it's not like you pointed this out to them and they didn't correct it. That might be a different kind of willful. But what you're really saying is they made a mistake. That mistake was willful under your interpretation. And then adding to it when you had more time, the fact that you didn't catch your mistake is willful. But I'm not sure that that really responds to Judge Callahan's and my concern. At the end of the day, you're basically turning willful into you made a mistake, but you wrote it down. You intentionally wrote the mistake down. I think that both our interpretation and Judge Gordon's is it was within only the Brodeur's control and obligation to correct the disclosure that they filed if it was incorrect. And it was not something that Liberty could do, and it was not anything that Liberty had an obligation to do. But if you're confused, do you have an obligation to, under your theory is if you're confused and you don't know what they're going to do, you have no obligation to ask a question. You can ask it on the eve of the bench trial. I believe that's correct, Your Honor. I think there is no obligation. That's the authority for that. I would cite the court to the Silver State broadcasting case from this case. The sites are in the briefing. But this was another ruling by Judge Gordon that was affirmed by this court. And in that case, the court held that the district court's exclusion under Rule 37 was an automatic exclusion sanction where under Rule 26a there had been a failure to disclose, and there was no need to move to compel disclosure before seeking sanctions. In other words, the suggestion that somehow it was incumbent on Liberty to seek clarification or move to compel clarification of the insurer's inadequate disclosures is unsupported. And it's contrary to this court's ruling in Silver State broadcasting. The facts in Silver State were a bit different. But look, when I look at this, I see a very broad, maybe an overly broad disclosure. And lawyers like to do that occasionally because they don't want to be hemmed in later. So there's an overly broad disclosure made. Okay? Counsel just somewhat acknowledged that. He said if there's a mistake, it was mine. The whole purpose of these disclosures is to try to avoid the kind of litigation we used to have in the old, old days where people would jump out from behind the bushes with newly discovered or newly, maybe not newly discovered, but at least newly brought forward evidence and then pop somebody with it. But that works two ways. If somebody serves you what you think is an overly broad disclosure that kind of can encompass virtually anything, don't you have at that point, and this goes back to something that I think Judge Van Dyke said earlier in the argument, don't you have some obligation to say, well, this is overly broad. Let me serve a request to compel so that we can get out of them exactly what this guy is going to testify to. But what happened here is that you kind of waited, and then when trial came along, you popped out of the bushes with your concern that this was not specific to the testimony he was going to be giving, and therefore away he goes. Now, I also am troubled by the fact that there was no weighing, or apparently in the record it doesn't appear to be, any weighing of harmlessness by the judge. And this is a good judge. Judge Gordon is a good judge. I'm not criticizing Judge Gordon, but it does not appear that there was any weighing of the harmlessness, and that has to be done under the rule. And that harmlessness goes to the whole concern that both Judge Callahan and Judge Van Dyke have been talking to you about, and that is the fact that you had to know because that was the whole case. Let me address the Court's last point first. In Stiller State Broadcasting, the Court explained that just because a defendant knew that there were damages claimed in the lawsuit and they were provided some information about the damages, that did not absolve the plaintiff's burden of disclosure of the specific computation of their damages under Rule 20. Okay, but that's dodging the question. In Yeti, we held that before sanctioning under Rule 37, a district court should consider whether the disclosure defect was harmless. That didn't happen here. So, Yeti seems to require that, and so my question would be, respond to what Yeti says. But also, it doesn't appear that the district court considered the harmlessness of the allegedly narrow Rule 26 disclosure. So, do we have to remand for that, or can we make that determination here? Well, to your first point, Your Honor, I do think that the district court considered harmlessness. I don't think that Yeti determined harmlessness. Can you write down the record where that happened? Certainly. Okay. I think that that was done in the findings in fact and conclusions of the law in the order following trial, which is in the excerpt of record at 4. I think it was done at the order on the post-trial motions where he once again notes the rule, and then specifically on the record during the arguments at trial concerning this, the court further considered harmlessness at the excerpt of record at page 88. Pages 646 to 648 and 750 and 751 in the excerpt of record. Is there any of this harmlessness used in any of those places? I don't recall whether he specifically, the judge specifically used the word harmlessness, but that was plainly the basis for the discussion that was being undertaken, is the fact that, among other things, that Liberty was entitled to rely on the disclosures about the issues for which these witnesses would testify, and it determined that it was not necessary, given the disclosures, to pursue discovery related to anything beyond those issues. To the point of one of, I'm sorry, I've forgotten now which of your honors asked this question, I would also disagree that this was a very broad disclosure. To the contrary, if this disclosure would have said, Mr. Brodeur intends to testify about issues relevant to coverage, we probably wouldn't be here. But that isn't what it is. A coverage trial, so what would you talk about? That he's going to talk about his bike rides or family vacations? That's a very odd argument. Well, it isn't Liberty's obligation to discern that. It's the insurance obligation, or in this case the Brodeur's obligation, to specifically state what the issues are about which they intend to offer testimony. In this instance, the disclosure, I would say, was very specific, not broad. They were going to offer testimony about the underlying action and the damages at issue, and those were the issues. Okay. Can we make the determination of harmlessness if we find that the judge did not make that finding? I believe the matter is, I mean, my opinion, Your Honors, certainly. You're the judge. Well, I know what you would want us to do, but let's talk about what the law says. What would change in the record? I believe that the matter would have to be remanded to Judge Gordon for a further determination on harmlessness, if that's what the court decides. But what would he have that we don't have right here in the record? Well, Your Honor, he had the benefit of actually hearing the trial and hearing the arguments of counsel, and he is a prior effect in this case. And so I think Judge Gordon, if it is the court's position that Judge Gordon was required to set forth the basis for his finding that this was not harmless, then he should be afforded an opportunity to do that on remand. Okay. You've gone over the time, but let me make sure my colleagues don't have any additional questions. All right. There's no additional questions, so that will conclude your argument. Thank you. Thank you very much. All right. You have, for the appellant, you have 2 minutes and 25 seconds. Thank you. How do you deal with the harmlessness issue? Can we make it here, or does it require remand? Your Honor, because it's a procedural determination on Rule 26, my understanding of the law is you can review that in no vote. You can make it here. There's nothing more on the record that Judge Gordon would have that you don't have in front of you. You can review that in no vote, and you can make that determination. That's my understanding of the law, and that's cited in our brief. So, Judge, I think you can do that, Your Honors. I'd like to go back very quickly just to the point that Judge Haslert brought up and Judge Callahan and Judge Van Dyke supported, and that is this issue of a surprise. I mean, the purpose of the rule is so you don't have some new surprise out there. That there's some new argument or something that they have no idea about. New claim, new argument. That didn't happen here. Nothing's further from the truth. You were surprised? I was surprised. So, I guess the question is surprise is inherent to this, but the question is who was surprised. I was surprised. They claim they were surprised. You claim you were surprised. I wasn't surprised by a new claim or a new argument. I was surprised that, in fact, they raised that at trial orally, that they never opposed it. You understand, in all the times they've been in front of the court on motions, motions for summary judgment that included the deposition of Yvonne Brewer, where she testified about extra use of the vehicle to service the property. Never did they raise that question. I mean, you can rule the way you want. They understood Liberty's counsel to just say they were not on notice of those depositions. Now, let me correct the record. That is not true. So, let me correct the record in several ways. Number one, Yvonne Brewer was, she testified before the scent discovery cutoff date, which was November of 2019. I'll talk about that in just a second. Yvonne Brewer, her deposition was in July of 2019. She testified specifically that that was used to go into town to obtain groceries and buy things for the property. Well, I thought you said they weren't a party to the depositions. That's another good lawyer's trick. Okay, let me tell you why. Because we all know what the law is in California and Nevada. It's a tripartite relationship for insurance retained defense counsel. The counsel that represented the brokers also, under the law, represents Liberty. Liberty had the knowledge that everything that their lawyers had, their insurance defense lawyers had. You're going over at this point. Let me find out if my colleagues have, yes. So, earlier you said that we can decide the issue of harmlessness. As I'm looking at your brief, it looks to me like you're saying that the federal rules, we review the district court's interpretation of the federal rules. That makes sense to me. A little bit harder question when they're applying the federal rules, and they're replying on facts. I don't see any authority about that in your brief, saying that that's de novo, because normally you would think that we'd give some deference to the district court's factual conclusions, even if you're reviewing them for clear error or something like that. So, I'm not sure that your brief is helpful on the specific question of whether or not what we do with the harmlessness determination, which required relying on facts. Yeah, and thank you, Judge. And I apologize for that. We could have been a little bit better there. But that's a great question. I just don't have an answer for it at this time. I'm happy to supplement the brief with a case that gives you direction on that. By way of letter, if you would like. No, I can't need to. If I didn't, we can. I've got clerks. But I would say. Well, I think maybe. Do we have any other questions? All right. We don't have other questions. You're over time now. So, that will conclude your argument as well. Fair is fair, both sides. When we're done, we're done. So, thank you both for your argument in this matter. And this matter will stand submitted as of this date. And this court is in recess until tomorrow at 9 a.m.  Thank you, Your Honors.
judges: CALLAHAN, VANDYKE, Ezra